# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>5620 Concord Parkway South,<br>Suite 202, North Carolina 28027 | )<br>)<br>) Case No. 1:19MJ55<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 15 U.S.C. § 2615(b) | Toxic Substances Control Act |
| 18 U.S.C. § 1341 | Mail Fraud |
| 18 U.S.C. § 1001 | False Official Statements |

The application is based on these facts:
(See Attached Affidavit)

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

William Oros, EPA CID Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/14/2019

*Judge's signature*

City and state: Winston-Salem, North Carolina

The Hon. Joi Elizabeth Peake, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF IN SUPPORT OF A SEARCH WARRANT

I, William Oros, Special Agent with the Charlotte Resident Office of the United States Environmental Protection Agency, Criminal Investigation Division, being duly sworn and deposed, state as follows:

## BACKGROUND/INTRODUCTION

1. I am a Special Agent with the United States Environmental Protection Agency ("EPA"), Criminal Investigation Division ("EPA-CID"). I have been so employed since approximately August 2008. As part of my EPA-CID training, I attended the Federal Law Enforcement Training Center in Glynco, Georgia and completed the twelve-week Basic Criminal Investigator Training Program. I have also completed the nine-week EPA-CID Environmental Investigator Basic Training Program. I have received training in investigating violations of the federal environmental and Title 18 laws and have investigated numerous pollution-related offenses and permit violations. I have a Bachelor of Science degree with a concentration in biology and a minor in chemistry. From February 1998 until August 2008, I was employed as an Environmental Analyst by the State of Connecticut Department of Environmental Protection ("CT DEP"). As an Environmental Analyst, I received training with respect to, and participated in, the investigation of violations of environmental laws and regulations. I have attended numerous

1

training courses on techniques for investigating environmental crimes and participated in the execution of multiple federal search warrants.

2. As part of my duties as an EPA-CID Special Agent, I investigate criminal violations of environmental laws, including the Toxic Substances Control Act (TSCA) at 15 U.S.C. § 2615(b), as well as violations of Title 18 of the United States Code. I am duly authorized by 18 U.S.C. § 3063, to carry firearms, to execute and serve any warrant or other process issued under the authority of the United States, and to make arrests without warrants for any offense committed in my presence or for any felony offense that I have probable cause to believe the person to be arrested has committed or is committing.

3. The statements made in this Affidavit are based on my personal knowledge; my training, education, and experience; information that I have received from regulatory personnel; and information contained in records that are maintained by offices and employees of the government of the State of North Carolina as well as information provided by individuals with knowledge of relevant facts. Because this Affidavit is being submitted for the limited purpose of securing a search warrants for the "Place to be Searched" described herein and in Attachment A hereto, I have not included each and every fact known to me concerning this investigation.

2

# STATUTORY AND REGULATORY BACKGROUND

**Toxic Substances Control Act – Asbestos Worker Certification - 15 U.S.C. § 2615(b)**

4. TSCA provides that "Any person who knowingly or willfully violates any provision of section 2614 or 2689 of this title, shall, be subject, upon conviction, to a fine of not more than $25,000 for each day of violation, or to imprisonment for not more than one year, or both."

5. 15 U.S.C. § 2614(1) provides that it shall be unlawful for any person to fail or refuse to comply with any requirement of subchapter II or any rule promulgated or order issued under subchapter II [15 U.S.C. §§ 2641-2653].

6. 15 U.S.C. § 2646(a) of TSCA provides, in relevant part, that a person may not design or conduct response actions, other than the type of action described in sections 2643(f) and 2644(c) of this title, with respect to friable asbestos-containing material in a public or commercial building, unless such person is accredited by a State under subsection (b) or is accredited pursuant to an Administrator-approved course under subsection (c).

7. Under 15 U.S.C. § 2646(b)(1), the EPA was required to develop a model accreditation plan for states to give accreditation to persons who inspect and design and carry out response plans in public or commercial buildings. The federal regulations implementing the provisions of TSCA at 40 C.F.R. Part 763, Subpt. E, App. C, sets forth a Master Accreditation Plan

3

(MAP) that, among other things, requires the use of trained and accredited asbestos professionals when conducting asbestos inspections or designing or conducting response actions at schools and public and commercial buildings. It provides guidance to States on the minimum training requirements for accrediting asbestos professionals.

8. Each State shall adopt a contractor accreditation plan at least as stringent as the model plan developed by the Administrator under 15 U.S.C. § 2646 (b)(1) of TSCA. The State of North Carolina has an asbestos contractor accreditation program administered by the North Carolina Department of Health and Human Services (NCDHHS) that, among other things, accredits asbestos training providers and issues asbestos licenses to workers and supervisors in the State of North Carolina under North Carolina General Statute, Chapter 130A, Public Health, Article 19.

9. Under the MAP regulations, any person who performs asbestos work requiring accreditation under 15 U.S.C. 2646(a) without such accreditation is in violation of TSCA. The following persons are not accredited for purposes of 15 U.S.C. 2646(a): (a) Any person who obtains accreditation through fraudulent representation of training or examination documents; (b) any person who obtains training documentation through fraudulent means; (c) any person who gains admission to and completes refresher training through fraudulent representation of initial or previous refresher training

4

documentation; or (d) any person who obtains accreditation through fraudulent representation of accreditation requirements such as education, training, professional registration, or experience. 40 C.F.R. Part 763, Subpt. E, App. C.

**Mail Fraud - 18 U.S.C. § 1341.**

10. 18 U.S.C. § 1341 provides, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such

5

matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

**False Official Statements – 18 U.S.C. § 1001**

11. 18 U.S.C. § 1001 states that, "in any matter within the jurisdiction of the executive ... branch of the Government of the United States, knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, shall be fined under this title, imprisoned not more than 5 years."

## COMPUTERS

12. Based on my training and experience, participation in environmental crimes investigations and financial investigations, which result from violations of environmental protection laws, I know that businesses engaged in asbestos abatement training keep business records in electronic/digital format on computers located at the site of the business.

13. Based on my knowledge, training, and experience, I know that computers can store information for long periods of time. There is probable cause to believe that things that were once stored on computers may still be stored there, for at least the following reasons: Based on my knowledge,

6

training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete

7

this information. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

14. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of computers located on the property described in Attachment B, consistent with the warrant. The examination may require authorities to employ techniques, including computer-assisted scans of the entire electronic storage medium (hard drive), that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

15. In October 2018, I was assigned to a criminal investigation of the alleged falsification of asbestos abatement worker certificates by the owners and operators of NovaCor Consulting Group, LLC ("NovaCor") located at 55 Shiloh Road, Suite 2, Asheville, North Carolina 28803; a satellite office at 5620 Concord Parkway South, Suite 202, Concord, North Carolina 28027; and a satellite office at 8024 Glenwood Avenue, Suite 104, Raleigh, North Carolina 27612 (the location in this judicial district being the "Place to be Searched").[1] I have reviewed information which EPA-CID received from the

---

[1] I note that I am seeking search warrants for the properties in the other two

8

NCDHHS and conducted interviews regarding the alleged falsification of asbestos abatement worker certificates.

16. On October 10, 2018, I received information from the NCDHHS that NovaCor, a temporary staffing business, operates an asbestos worker/supervisor training and certificate program accredited by the State of North Carolina.

17. NCDHHS has audited two NovaCor classes, one in which a worker failed to complete the course, and the second in which the class was canceled. In both of those cases, however, NovaCor issued certificates of course completion and submitted, or caused to be submitted, to NCDHHS said certificates to obtain asbestos worker licenses. Based on NCDHHS records, false certificates were submitted to the NCDHHS through the United State Postal Service with payment. Once a certificated has been obtained through NovaCor's certificate program it can be used to obtain a license to abate asbestos in all 50 of the United States.

18. NCDHHS personnel have notified this affiant that:

    a. Ana Sanchez (Sanchez) is NovaCor's asbestos training coordinator. NovaCor personnel assist in filling out State

districts, with the intent to coordinate their executions within a short time frame of each other.

licensing paperwork for asbestos workers and use NovaCor's addresses and contact number as the employee's home contact information. Ms. Sanchez's office is in NovaCor's Concord location. Her office has computers, a training area, and physical files that Ms. Sanchez has told NCDHHS contain documents related to NovaCor's asbestos training program. NCDHHS personnel report that NovaCor's Raleigh office also has computers, physical files, and a training area.

b. One asbestos accreditation application records submitted to NCDHHS with a false certificate of training identifies the applicant's home address as 8024 Glenwood Avenue, Suite 104, Raleigh, NC, 27612 (NovaCor's Raleigh office), and their work address as NovaCor Consulting Group LLC, 5620 Concord Pkwy South, Suite 202, Concord, NC (NovaCor's Concord office).

c. Another asbestos accreditation application record submitted to NCDHHS with a false certificate of training identifies the applicant's work address as NovaCor Consulting Group, 55 Shiloh Road, Asheville, NC 28803 (NovaCor's Asheville office).

d. NCDHHS issued NovaCor a Notice of Violation (NOV) following the submittal of a September 13, 2017, false certificate of training. Jared Dillingham of NovaCor Consulting Group

10

responded to NCDHHS that he "understood there has been a mix up with paperwork," that he has "a passion to continue to develop and maintain an impeccable training school," and that "this situation is a complete fluke!"

e. NovaCor's directory identifies Jared Dillingham as their Chief Analytics Officer and his office address as 55 Shiloh Road, Suite 2, Asheville, NC, 28803.

f. NCDHHS issued NovaCor an NOV on September 4, 2018, following the submittal of several false certificate of training following a June 2018 training class that never occurred. As of December 13, 2018, NovaCor has not responded to the NOV, even though the NOV required a response within 14 days of its issuance date.

19. I submit that a search, forensic analysis, and seizure of electronic data from electronic devices seized in this case is likely to provide incriminating evidence against NovaCor and other targets of the investigation.

## CONCLUSION

Based upon training, experience, and the facts of this investigation, I submit that there is probable cause to believe that Items to be Seized, listed

11

in Attachment B, will be found inside of the "Place to be Searched," described in Attachment A (~~including the land, building, and any outbuildings~~ or ~~vehicles~~), and that it will yield evidence relevant to the alleged violations of TSCA and 18 U.S.C. §§ 1001 and 1341; therefore, I request that the Court issue warrants to search them.

_____
AFFIANT, SPECIAL AGENT, WILLIAM OROS
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
CRIMINAL INVESTIGATION DIVISION

Subscribed and sworn to by me this 14 day of February, 2019.

_____
THE HONORABLE JOI ELIZABETH PEAKE
UNITED STATES MAGISTRATE JUDGE

12

# ATTACHMENT A
## Place to be Searched

The property to be searched is located at 5620 Concord Parkway South, Suite 202, Concord, North Carolina 28027. It is located within a two-story red brick building bearing signage as Speedway Centre, directly across Concord Parkway from the Charlotte Motor Speedway. Speedway Centre contains multiple business suites including Suite 202, located on the second floor directly above Craig's Gun Supply. Stairs to the second floor are located on the southwest side of the building and accessible from the parking lot. Suite 202 has a number to the left of the office door, but there is no business name on the door or window. A photograph of Speedway Centre, as it appears from Concord Parkway, is directly below, and second photograph below shows the location of the property to be searched, Suite 202.







1

# ATTACHMENT B
## Items to be Seized

This Affidavit is made in support of this Application to seize records showing violations of 15 U.S.C. § 2615(b), the Toxic Substances Control Act – Asbestos Worker Certification; 18 U.S.C. § 1341, Mail Fraud; 18 U.S.C. § 1001, False Official Statements, in the form of:

1. Documents of NovaCor's temporary staffing business and asbestos training and certificate program business, including books, records, papers, notes, licenses, certificates, calendars, correspondence, ledgers, receipts, billing records, directories, identification cards, notes, schedules, addresses, telephone records, payroll records, time cards, tax documents, employee files, applications, work orders, invoices, records of employee placement, contracts, resumes, training records, training attendance records, examination records, instructor files, customer files, policy and title documents.

As used above in Paragraph 1, the term "records" includes all evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

### Procedure for Seizure of Items Listed Above

Where the items listed above are in the form of computer or electronic

1

storage, those items are to be seized by means of creating a forensic image of the computer or electronic media on site. Where the size of the data or complexity of any computer system containing the items to be seized makes the on-site creation of a forensic image impractical or impossible, the seizure of such a computer system is authorized for a period not to exceed three days after execution of the search warrant, unless extended upon further application to the Court.